BERNE B. BLEICH *v.* FLORENCE CROSBY ORTIZ ET AL.
(11714)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued April 2—decision released June 18, 1985

*David J. Elliott,* with whom, on the brief, was *James L. Ackerman,* for the appellant (plaintiff).

*Thomas W. Mochnick,* with whom, on the brief, was *F. Timothy McNamara,* for the appellees (defendants).

PETERS, C. J. The issue in this appeal is the propriety of directing a verdict in a libel action when a defense of conditional privilege is raised. The plaintiff, Berne B. Bleich, brought suit against Florence Crosby Ortiz for libel.[1] The trial court granted the defendant's motion for a directed verdict and the plaintiff appealed. We find error.

Many of the facts underlying the appeal are undisputed. The plaintiff Bleich is an antique dealer. In 1978, he consigned an antique amber and ivory cabinet to Christie, Manson & Woods, Ltd., of London (Christie's) for sale at auction. The cabinet was sold by Christie's for $23,340. The defendant Ortiz also deals in antiques. After learning of the sale, she had her attorney send two letters to Christie's in which she claimed

---

[1] Andelmo Ortiz is also a defendant in this case. Since he played little part in the underlying controversy, only the named defendant will be referred to in the opinion.

ownership of the cabinet and asked Christie's to withhold the proceeds of the sale from the plaintiff.[2] The plaintiff, contending that he had been defamed by the letters, filed this lawsuit in December, 1979. In December, 1980, the defendant filed a separate action, *Ortiz v. Bleich,* claiming ownership of the cabinet and seeking damages for its conversion by the plaintiff.

The two suits were tried together to a jury. After the plaintiff had presented his case, relying heavily on his own testimony, the defendant moved for a directed verdict on the libel claim. She conceded for the purposes of the motion that the letters were defamatory, but contended that she had a conditional privilege to publish them and that the plaintiff had adduced no evidence that the privilege had been abused.[3] The trial court agreed and granted the motion. The court denied the plaintiff's motion to set aside the directed verdict. The jury subsequently decided the ownership suit in favor of the plaintiff and that decision was not appealed.[4]

The plaintiff raises two issues on appeal. His primary contention is that the trial court erred in directing a verdict for the defendant on the libel claim. The plaintiff further argues that this court should direct judgment in his favor on that claim, leaving the amount of damages as the sole issue to be decided upon remand.

The rules controlling appellate review of a directed verdict are well settled. "Directed verdicts are not generally favored. A trial court's decision to direct a ver-

[2] The first letter is dated December 12, 1978. The second letter is undated but was apparently sent sometime in January, 1979.

[3] The defendant now claims the additional defense of absolute privilege. Having expressly waived any such claim at trial, she cannot raise the issue on appeal. Practice Book § 3063.

[4] Because the jury's decision in the ownership suit might have been influenced by the directed libel verdict, the trial court properly postponed the actual direction of the latter verdict until the jury had returned its verdict in *Ortiz* v. *Bleich.*

dict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. *Pinto* v. *Spigner,* 163 Conn. 191, 192–93, 302 A.2d 266 (1972); *Console* v. *Nickou,* 156 Conn. 268, 270, 240 A.2d 895 (1968); *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2 (1964). In reviewing the trial court's decision directing a verdict [for the defendant] and denying a subsequent motion to set it aside, this court considers all the evidence, including reasonable inferences, in the light most favorable to the plaintiff. *Pinto* v. *Spigner,* supra; *Leary* v. *Johnson,* 159 Conn. 101, 104, 267 A.2d 658 (1970)." *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979); see *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982).

The tests that govern a libel defense of conditional privilege are also clear. For the defense of conditional privilege to attach, a defendant must assert an objective interest sufficiently compelling to warrant protection of an otherwise defamatory communication. The privilege is defeated despite assertion of such an interest, however, if the defendant acts with an improper motive or if the scope or manner of publication exceeds what is reasonably necessary to further the interest. *Charles Parker Co.* v. *Silver City Crystal Co.,* 142 Conn. 605, 615–16, 116 A.2d 440 (1955); *Terry* v. *Hubbell,* 22 Conn. Sup. 248, 256, 167 A.2d 919 (1960); Wright & FitzGerald, Connecticut Law of Torts (2d Ed. 1968) §§ 157 and 158; see generally 3 Restatement (Second), Torts §§ 593 through 605A (1977). Whether a defamatory communication implicates an interest worthy of protection is a question of law for the trial court to determine, but whether the privilege is nevertheless defeated through its abuse is a question of fact to be decided by the jury. *Hassett* v. *Carroll,* 85 Conn. 23, 36, 81 A. 1013 (1911); *Atwater* v. *Morning News Co.,* 67 Conn. 504, 513, 34 A. 865 (1896); Wright & FitzGerald, supra, § 155; 3 Restatement (Second), Torts § 619.

Considering the evidence in the light most favorable to the plaintiff, the jury could reasonably have found the following facts. The plaintiff and the defendant met in March, 1970. The plaintiff bought antiques from the defendant for resale and developed a good business and personal relationship with her. In the fall of 1970, the plaintiff purchased a damaged figurine from the defendant and repaired it. The defendant was impressed with the repair and showed the plaintiff the amber and ivory cabinet, which the defendant had dropped and badly damaged some time previously. Explaining that she had unpleasant memories of the accident, the defendant gave the cabinet to the plaintiff as a gift. The plaintiff effected partial repairs and tried to return it to the defendant, but the defendant insisted that the cabinet belonged to the plaintiff. Several years later the defendant offered to buy the cabinet back, but she never asked for its return. The plaintiff openly displayed the cabinet in his home until he consigned it to Christie's for sale.

The first letter sent by the defendant's attorney to Christie's stated that the cabinet "had recently become damaged, and Mr. Bleich, knowing the piece, offered to make arrangements to have the damage repaired. The piece was given over to Mr. Bleich for purposes of the repair approximately six months ago. Soon after Mr. Bleich left for Europe and was unable to be contacted. Mrs. Ortiz, when receiving your December 11th catalog of sold pieces, was understandably extremely upset to see her piece pictured as being sold. Mrs. Ortiz was, and may still be the owner of that piece, and Mr. Bleich, whom we understand consigned this piece to you for sale, had no title to convey." Christie's was asked to "withhold payment of any monies from the sale of this piece to Mr. Bleich" until the dispute could be resolved.

The second letter recounted the plaintiff's assertion that he had been given the cabinet as a gift and stated: "This is patently ridiculous, and it appears we will have difficulty at this end. Therefore we are filing suit alleging this illegal conversion of the property to his own benefit and will request the appropriate Court to order payment for the article to Mrs. Ortiz. In the meantime, therefore, it is extremely urgent that you do not release the money from the sale of this article to Mr. Bleich prior to either settling the issue with him, or of obtaining a Court Judgment as to who is entitled to the proceeds." The letters were admitted as full exhibits at trial.[5]

The trial court correctly decided that the defendant had established the necessary predicate for invocation of a conditional privilege. The court held, and the plaintiff does not deny, that the privilege may be asserted to protect an ownership interest in personal property. See *Ely* v. *Mason,* 97 Conn. 38, 42–44, 115 A. 479 (1921); Fain, Guman & Tobin, "The Law of Defamation in Connecticut," 38 Conn. B.J. 420, 454–55 (1964). In this case, given the dispute about the circumstances surrounding the delivery of the cabinet from the defendant to the plaintiff, the defendant's claim that she was the true owner of the cabinet is an assertion that merits protection. Because the letters were sent in furtherance of this claim, they are conditionally privileged.

The trial court erred, however, in holding that the plaintiff had produced no evidence that the privilege had been abused. The court found that there was no evidence from which the jury could reasonably conclude that the defendant had either acted with an improper motive or gone beyond the bounds of necessary publication. We disagree.

---

[5] The full text of the letters is set forth as an appendix to this opinion.

Even when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. See, e.g., *Proto* v. *Bridgeport Herald Corporation*, 136 Conn. 557, 564, 72 A.2d 820 (1950); *Corsello* v. *Emerson Bros., Inc.*, 106 Conn. 127, 132, 137 A. 390 (1927). The jury, as the sole judge of credibility, would have been entitled to credit the plaintiff's testimony in its entirety. If the jury had chosen to do so, it could reasonably have decided that the defendant had indeed given the cabinet to the plaintiff as a gift and that the defendant's attempt to obtain the sale proceeds was dishonestly undertaken out of an improper and unjustifiable desire for monetary gain. The jury could have relied on the erroneous assertions in the first letter, that the cabinet had only recently been damaged and that it was given to the plaintiff to repair six months before the sale, as additional evidence of the defendant's bad faith in making her claim of ownership.

An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive. See *France* v. *Gaston*, 11 Conn. Sup. 1, 4 (1942); 3 Restatement (Second), Torts §§ 604 through 605A. Although the plaintiff made no claim that Christie's was not a proper recipient of the letters, the jury could reasonably have found that the statements that the plaintiff's claim of gift was patently ridiculous and that the defendant was filing a suit for illegal conversion were not necessary to the protection of the defendant's lawful interest in the cabinet and exceeded the scope of the privilege.

We conclude that the plaintiff adduced sufficient evidence to enable the jury to find that the defendant had abused her conditional privilege. The trial court therefore erred in directing a verdict for the defendant.

The plaintiff, however, cannot prevail in his claim that judgment should now be directed in his favor. Although the jury could reasonably have found that the defendant abused her privilege, it was not bound to do so. The evidence of abuse was not unequivocal. Moreover, because a verdict had been directed in her favor at the close of the plaintiff's case, the defendant presented no evidence on the question. Nor does the plaintiff's victory in the title contest determine the outcome in this case. The title verdict was rendered on a distinct issue by a jury that was never instructed on the law of libel, and therefore it cannot serve as a surrogate for a libel verdict. In short, while the question of whether the defendant abused her conditional privilege should not have been taken from the jury at trial, that question is equally ill-suited to decision as a matter of law on appeal.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

## Appendix

December 12, 1978

Mr. Paul Whitfield, Managing Director
Christie's
8 King Street
London, England

Dear Mr. Whitfield,

This letter will refer you to a certain piece known as North German Amber and Ivory Cabinet, Danzig, 1630-1640, from the Ole Olsen Collection, which was published in your catalog as having been sold on December 22, 1978 [sic].

This piece was purchased in Sweden in 1949 by Everett and Florence Crosby. This office represents Florence Ortiz, the

former Florence Crosby, who was the sole heir to Mr. Crosby's estate, and was the sole owner of the Olsen piece.

Mrs. Ortiz is a registered Antique Dealer in the United States. In her capacity as a dealer, she has in the past, had various dealings with a Mr. Berne Bleich, of Torrington, Connecticut to whom she has sold various pieces. The piece referred to above, had recently become damaged, and Mr. Bleich, knowing the piece, offered to make arrangements to have the damage repaired. The piece was given over to Mr. Bleich for purposes of the repair approximately six months ago. Soon after Mr. Bleich left for Europe and was unable to be contacted.

Mrs. Ortiz, when receiving your December 11th catalog of sold pieces, was understandably extremely upset to see her piece pictured as being sold. Mrs. Ortiz was, and may still be the owner of that piece, and Mr. Bleich, whom we understand consigned this piece to you for sale, had no title to convey.

We recognize that under English law, and because of the distance between us, it may be difficult to obtain the piece back. Her only recourse therefore is to strongly request that you withhold payment of any monies from the sale of this piece to Mr. Bleich. We are attempting to contact Mr. Bleich so as to confront him with our knowledge of the sale and, hopefully, we will be able to conclude this matter within the next thirty days.

We shall keep you informed. If you have any questions, please contact this office.

Yours truly,

John F. Besozzi, Jr.

JFB:bb

———

Christie's
8 King Street
London, England

RE: Florence Ortiz vs. Berne Bleich

Gentlemen:

On December 12, 1978, we wrote to you referring to your sale of the North German Amber and Ivory Cabinet for the

account of Berne Bleich. We requested that you withhold monies from this sale until we contacted Mr. Bleich as he had converted this piece to his own use and had sold it without authority.

We have, in the meantime, located Mr. Bleich and, when faced with this matter, he has maintained that his possession of the piece was as the result of a gift from Mrs. Ortiz to himself. This is patently ridiculous, and it appears we will have difficulty at this end. Therefore we are filing suit alleging this illegal conversion of the property to his own benefit and will request the appropriate Court to order payment for the article to Mrs. Ortiz. In the meantime, therefore, it is extremely urgent that you do not release the money from the sale of this article to Mr. Bleich prior to either settling the issue with him, or of obtaining a Court Judgment as to who is entitled to the proceeds.

We would be happy to enter a bill of interpleader in your behalf for your protection. This bill would simply acknowledge to the Court that you do hold money, the title to which is uncertain, and you will hold this money at the discretion of the Court and until you are directed whom to pay. Please let me hear of your views on this matter.

Yours truly,

John F. Besozzi, Jr.

JFB:bb