[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a libel action in which the plaintiff, Roger Wollen, claims he was defamed by two articles written by defendant Paul Brown that appeared in the Easton Courier, a newspaper owned and published by defendant Hometown Publications, Inc. Both articles which were captioned "MY TURN" and appeared on the editorial page as op-ed pieces concerned a town referendum of an $8.2 million bond for a proposed school renovation in Easton.
The first article appeared on March 9, 1989, and referred to two unnamed opponents of the building project as "merry bandits." They were further identified in the article as "former members of the School Building Committee the one that was deposed for lack of meaningful progress." The plaintiff Wollen had in fact once been a member of this committee. The same article stated that while proponents of the project were telephoning Brown from their places of work, opponents of the project were out in the town CT Page 8095 during work hours ("[m]any of the opponents who (sic) I discussed the project with run into me at the post office or at Town Hall during the afternoon. I am working and glad to talk to them, because it is my job. But, I often wonder what the heck these people are doing wandering around Easton at two p. m. on a Thursday afternoon. I don't know"). Also in this article, Brown wrote that opponents of the project were motivated, it seemed to him, by "that fierce red-eyed dragon called Spite." Plaintiff was not mentioned by name anywhere in this first article.
The second article, published on March 16, 1989, two days after the voters of Easton approved the bond issue, consisted of a mock telephone call by Brown returning a call he had received from Wollen several days previously. During the earlier call, Wollen had inquired whether Brown's reference to "merry bandits" in the March 9 column had anything to do with him. Brown answered in the March 16 article by writing that "although I made no specific reference to you in last week's column, I did answer your question by saying, yes indeed, I had you in mind when I wrote of `merry bandits.'" Brown also wrote in this same article that although Wollen "would never admit to [Brown] that [he] might be out for vengeance, it came to [Brown's] attention that [Wollen] did so to other inquiring, non-media-related residents." Brown also referred to spite as the motivating factor behind Wollen's opposition to the bond issue. Copies or these two articles will be found as Appendix A and Appendix B to this decision.
Plaintiffs second amended complaint dated October 24, 1990, contains five counts. Count one alleges defamation based on statements in the March 9, 1989 article; count two is for defamation based on statements in the March 16, 1989 article; counts three and four allege that the defendants failed to include material facts in the two articles, which failure caused the articles to be defamatory; and count five alleges defamation based on a paragraph of the March 16 article which was edited out of the article after a draft had been circulated among the newspaper's staff.
The defendants filed several special defenses, including that the words "merry bandit" are not defamatory; that the defendants are entitled to a privilege for fair comment about public matters: that Wollen was a "limited purpose public figure" for purposes of the bond referendum and therefore could not recover in the absence of proof of malice; and that the freedom of the press provisions in both the United States and Connecticut constitutions insulate the defendants from liability. Another special defense, lack of publication, refers to count five and the sentence that was excised from the second column before it appeared in the newspaper ("in my many dealings with the Easton public, I have heard you [Wollen] labeled many things, the least offensive of which being a `merry bandit'".
The defendants now move (#124) for summary judgment on all counts; CT Page 8096 Practice Book 379; claiming that there are no genuine issues of material fact, and that they are entitled to judgment on their special defenses as a matter of law. The criteria for the granting of a summary judgment were summarized by the Appellate Court in Cummings Lockwood v. Gray,26 Conn. App. 293, 296-297, 600 A.2d 1040 (1991): (i) such a judgment may be granted if there is no genuine issue as to any material fact; (ii) a material fact is one that will make a difference in the outcome of the case; (iii) the moving party has the burden of proving the nonexistence of any material fact; (iv) the evidence must be viewed in the light most favorable to the nonmovant; and (v) the test is whether the moving party would be entitled to a directed verdict on the same facts.
Another recent case, Wadia Enterprises, Inc. v. Hirschfeld,27 Conn. App. 162, 166, 168-70, 604 A.2d 1339 (1992), sets forth the obligations of the nonmovant: (i) the party opposing summary judgment must substantiate its claim to the contrary by showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue; (ii) "[m]ere statements of legal conclusions and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment;" (iii) "[i]t is not enough that one opposing a motion for a summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit;" (iv) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred;" (v) "[m]ere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue;" and (vi) a claim that summary judgment is not appropriate because "intent" is involved "does not relieve [the nonmovant] from presenting a requisite factual predicate for its claim."
Count One
I have concluded as a matter or law that the words "merry bandit" are not defamatory. As was said in Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 612, 116 A.2d 440 (1955), "if the alleged defamatory words could not reasonably be construed defamatory in any sense, the matter becomes an issue of law for the court."
The plaintiff claims that these words accuse him of thievery or vandalism. Brown asserted in his deposition, however, that he meant to describe Wollen as a saboteur, an agent provocateur so to speak, working against the expenditure of money for the school renovation. Determining whether certain words are defamatory is similar, I believe, to deciding what matters are pornographic: one is hard put to define it, but you know it when you see it. Jacobellis v. Ohio, 378 U.S. 184,197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) CT Page 8097 ("under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hardcore pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that"). The parties were unable to cite a case containing the words "merry bandit", which is understandable as the phrase is unusual, but when I see the words I believe they could not reasonably be construed as defamatory.
As to the phrase in the first article claiming that the opponents were motivated by "spite," Brown couched this assertion as an opinion by writing that this was how it seemed to him. Moreover, Brown did not specifically identify Wollen as so motivated in the first article.
The plaintiff chose to assume a leadership role in a controversy that was sure to create public interest, since Easton is a small town and clearly its schools are important to many people there. A person choosing to so involve himself must anticipate characterizations, some unflattering, in the local press, and has to be "thick-skinned".
Of course I can understand and sympathize with Wollen's irritation. The columns in question might well be regarded as puerile, sophomoric, rude, in bad taste, or all of that. For example, Brown apparently does not realize that there are a number of quite respectable reasons why responsible people might have free time in the afternoon. The real issue, however, is the phrase "merry bandit," and those words simply cannot be considered defamatory, either standing alone or in the context of the two articles.
Thus, summary judgment should enter on count one in favor of the defendants.
Count Two
This count asserts that statements in the March 16 article concerning spite and vengeance are defamatory. Defendants argue that even if the statements are defamatory, they are protected by the qualified privilege afforded newspapers when they are publishing matters of public interest concerning public figures. Where the privilege applies, the plaintiff must then prove actual malice, that is, knowledge of the falsity of the statement or reckless disregard of whether or not the statement was false. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80,84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
The plaintiff argues that he is not a public figure. The determination of whether or not a party is a public figure is for the court to determine. Waldbaum v. Fairchild Publications. Inc., 627 F.2d 1287, 1293 (D.C. Cir.), cert. denied, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). A public figure is one who has "thrust [himself] to the forefront of [a] CT Page 8098 particular public controvers[y] in order to influence the resolution of the issues involved." Gertz v. Robert Welsh, Inc. 418 U.S. 323, 345,94 S.Ct. 2997,41 L.Ed.2d 789 (1974). See also Miles v. Perry, 11 Conn. App. 584,592-93, 529 A.2d 199 (1987). Since plaintiff thrust himself into the forefront of the controversy surrounding the referendum with the intention of influencing the outcome, he is a public figure with respect to the issues involved therein, and must prove that the privilege was abused.
Although there is some support for the proposition that a public figure may lose his public status with the passage or time; see, e.g., Wolston v. Reader's Digest Association. Inc., 443 U.S. 157, 170,99 S.Ct. 2701,61 L.Ed.2d 450 (1979); there has been no conclusive determination or this issue. As stated by Justice Blackmun in his concurring opinion, "a lapse of years between a controversial event and a libelous utterance may diminish the defamed party's access to the means of counterargument . . . [and] may diminish the `risk of public scrutiny' that a putative public figure may fairly be said to have assumed." Id., 170-71. Since the March 16 article was published within days of the referendum, neither of Justice Blackmun's concerns are relevant in this case.
Thus, two questions of fact are left unresolved: whether the statements accusing Wollen of spite and vengeance are libelous, and whether the defendants abused the privilege of fair comment. Both issues are for the jury. See Hutchinson v. Proxmire, 443 U.S. 111,120 n. 9, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (caution should be used in granting summary judgment on the issue of actual malice since malice involves one's state of mind); Bleich v. Ortiz. 196 Conn. 498,501, 493 A.2d 236 (1985) (whether privilege is defeated through its abuse is question of fact for the jury). Thus, defendants' motion for summary judgment on count two is denied.
Counts Three and Four
In these two counts the plaintiff alleges that the defendants defamed him by omitting certain material facts which would have changed the tone, inference and implications of the articles. Plaintiff suggests that the articles should have stated his expressed reasons for opposing the bond issue instead of implying that his reasons were unworthy.
The subject of defamation by innuendo was discussed in Strada v. Connecticut Newspapers Inc., 193 Conn. 313, 477 A.2d 1005 (1984), where the court held that in Connecticut "there [can] be no libel by innuendo of a public figure where the challenged communication is true." Id., 323, 327. Because plaintiff is a public figure, at least for purposes of the bond referendum, summary judgment on counts three and four is entered in favor of the defendants.
As to count three, this court has already determined that the March 9 article is not defamatory. Count four, on the other hand, is no more than a repetition of count two. If, for example, the alleged defamatory CT Page 8099 statements in the March 16 article are true, plaintiff has no cause of action under the holding in Strada supra. If, on the other hand, the statements are proved to be false, then omission of the alleged material facts is irrelevant. Further, the defendants "have no obligation to place the plaintiff in the most favorable light." Strada, supra, 325. Therefor, summary judgment is granted on count four in favor of the defendants.
Count Five
The plaintiff also claims that a certain phrase that never actually appeared in the newspaper, which stated that "merry bandit" was one of the kinder descriptions of Wollen that the defendant Brown had heard, was nonetheless published in the sense that other employees of the newspaper saw it before it was edited out of the March 16, 1989 column. Publication to a third party is and essential element of defamation. See Slez v. Komarow, 2 CSCR 176, 177 (December 29, 1986, Harrigan, J.), citing Prosser, Law of Torts 113 (4th ed.). Such transmission from one employee of the defendant newspaper to another "amount[s] to nothing more than the corporation, through its agents, talking to itself." L. Cohen Co., Inc. v. Dun Bradstreet, Inc., 627 F. Sup. 1425, 1427
(D.Conn. 1986). Cohen points out the difficulties in allowing defamation actions of this nature to go forward, specifically, the burden on the courts resulting from an increase in such actions against newspapers which would ultimately fail on the basis of privilege, and the problem of correction or retracting inaccurate information without causing further libelous publications. Id. Although no Connecticut court has addressed this issue, I find Cohen to be persuasive authority, and conclude that plaintiff has not proven defamation with respect to the deleted material.
Further, even if the publication requirement was met, the statement that Brown had "heard" worse things about Wollen than "merry bandit", without more, is not defamatory. This is hyperbole, which is constitutionally protected. See Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 122, 448 A.2d 1317 (1982). Moreover, the inference refers back to "merry bandits" which has been determined to be non-defamatory. Based on the foregoing, judgment is entered on count five in favor of the defendants.
In summary, defendants' motion for summary judgment is granted as to counts one, three, four and five, and is denied as to count two.
So Ordered.
Dated at Bridgeport, Connecticut this 27, day of August, 1992.
William B. Lewis, Judge
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] CT Page 8100
[EDITORS' NOTE: APPENDIX B IS ELECTRONICALLY NON-TRANSFERRABLE.]