[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Gundersen instituted this proceeding in a complaint subsequently amended in five counts against William Manion and Nuclear Energy Services ("NES"), seeking damages arising out of the termination of his employment.[1] That employment began on December 17, 1979 and ended May 21, 1990. On April 17, 1990, CT Page 7788 while in his capacity as senior vice president of NES, he inspected a safe stored within NES headquarters and discovered that the safe contained "radioactive-bottled" materials. Upon discovering the radioactive materials, he notified both the Radiation Safety Commission and William Manion, the president of NES, of his safety concerns regarding his discovery. His employment was subsequently terminated on May 21, 1990. He continues his factual predicate by reciting that on December 21, 1990, NES entered into a General Release and Settlement Agreement ("Agreement"). Approximately two months after executing the Agreement, he presented testimony before a "public body" on issues regarding nuclear safety and that his testimony was "narrowly-worded and in complete compliance with the mandates of the Agreement." All counts of the amended complaint are directed against NES and William Manion (hereinafter "defendants").
The first count sounds in defamation and alleges that since being terminated from NES, he has independently operated his own service business titled "Gundersen Management Analysts" ("GMA") which serves the nuclear and non-nuclear needs of its customers, as well as performing whistleblower assessment and environmental remediation. He continues by saying that the dissemination of an April 22, 1991 letter served to malign "his personal and professional reputation for credibility and competence." The statement, "Mr. Gundersen's whistleblowing accusations are false and without merit" as contained in the letter is false, unprivileged and attacked plaintiff's ability to perform his present employment functions and to be perceived as a reliable businessman.
The second count alleges a breach of contract. By disseminating the letter of April 22, 1991, the defendants have violated and breached the terms of the Agreement, specifically, paragraph 11, wherein the parties agreed to hold the existence of the Agreement and all of the contents of its provisions, terms and conditions, in strictest confidence and not to disclose its existence or the contents of its provisions, terms, or conditions to any party. Gundersen claims that despite making demands upon the defendants to retract their respective statements, that they have refused to accede to his request. The remaining counts allege causes of action sounding in interference with prospective advantage, intentional infliction of emotional distress and negligent infliction of emotional distress.
The two special defenses filed with the answer respond that CT Page 7789 as to count one their "[s]tatements were protected by a qualified privilege because Manion's letter was published in good faith, was carefully limited to the findings of the Department of Labor, and sought to `set the record straight' in the face of Gundersen's unsubstantiated and false claims of retaliatory discharge." As to count two, that any breach was excused by Gundersen's prior breach of contract in that his statements regarding NES violated "the letter and the spirit" of the agreement entered into between the parties, and that any subsequent breach by the defendants "was necessary to mitigate the damage caused by Gundersen."
Manion's affidavit asserts that Gundersen "continued to publicly state that he had discovered violations of law at NES and had been discharged for reporting them."[2] Manion states that he issued a letter on April 22, 1991 to members of the Low-Level Radioactive Waste Advisory Committee, Legislative Subcommittee, Northeast Utilities and various other people who may have been privy to the plaintiff's charges.[3] The letter of April 22 stated that Gundersen's accusations were false, that an independent investigation of those accusations could not substantiate them and that he was discharged as part of a general staff reduction.
A motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"Connell v. Colwell, 214 Conn. 242, 246, quoting Zichichi v.Middlesex Memorial Hospital, 204 Conn. 399, 402. A material fact is simply a fact which will make a difference in the result of the case. Genco v. Connecticut Light Power Co., 7 Conn. App. 164,167. The burden of proof is on the moving party. "[T]he facts presented must be viewed in the light most favorable to the party opposing the motion." State v. Goggin, 208 Conn. 606, 616. "To satisfy his burden, the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact."Fogarty v. Rashaw, 193 Conn. 442, 445, quoting Dougherty v.Graham, 161 Conn. 248, 250. Issue finding, rather than issue determination, is the key to the procedure. Yanow v. TealIndustries, Inc., 178 Conn. 262, 269.
Count 1 — Defamation
CT Page 7790
"`Broadly speaking, "defamation" is an attack on the reputation of another, that is to say, the unprivileged publication of false statements which naturally and proximately result in injury to another. The term is used to connote fault in the context of broadcasting an alleged insult.'" Ford v. B. D.Trustees, Conn. State University, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 511557 (August 12, 1993, Koletsky, J.); quoting 53 C.J.S. Libel and Slander, Sec. 2 (1987, Sup. 1992). The court continued by citing 3 Restatement (Second) Torts, Sec. 558, that to create liability for defamation there must be:
(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
 (c) fault amounting to at least negligence on the part of the publisher;
 (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability only if he (a) knows that the statement is false and that it defames the other; (b) acts in reckless disregard of these matters; or (c) acts negligently in failing to ascertain them. "In defamation actions, the standard of fault applicable to `private individuals' merely requires the plaintiff to prove a negligent misstatement of fact." 3 Restatement (Second), supra, 580B.
The defendants argue that the letter of April 22, 1991 is not defamatory, but is truthful, and that truth is an absolute defense to a defamation action. They contend that the letter is not actionable as it is protected by a qualified or conditional privilege in that it concerns matters of common business interest, was published in good faith and was carefully limited to the Labor Department's findings. Ultimately, they argue that the letter is not actionable because the plaintiff instigated its publication. Gundersen claims that the Manion letter is false and defamatory because the letter failed to state truthfully CT Page 7791 claims which would support his representations that NES violated certain regulations and licensing conditions. The Manion letterIS actionable, and is therefore neither qualified nor privileged.
The elements of the defense of conditional privileges are "(1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only."Miles v. Perry, 11 Conn. App. 584, 595. "Even when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. [Citations omitted.]. . . . An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive." Bleich v. Ortiz,196 Conn. 498, 504.
Gundersen's affidavit hypothecates that "[t]he NES letter was sent to seventy-eight (78) individuals."[4] He incorporated a list by reference which names each and every person to whom the letter was sent.[5] Manion responds that "[i]n response to Gundersen's reported statements, on April 22, 1991, I issued a letter to members of the Low-Level Radioactive Waste Advisory Committee, members of the legislative subcommittee, Northeast Utilities and others who may have learned of Gundersen'scharges."[6] (Emphasis added.) The documentation before the court unmistakenly frames a genuine issue of material fact as to whether publication was made to proper parties only or whether the letter in question was addressed to parties whose knowledge of the matter is not reasonably believed to be necessary to protect the NFS's interest in rebutting the plaintiff's representations. The question of truth as an absolute defense should also be decided by the fact-finder.
A related argument by the defendants in their brief is that the letter is conditionally privileged because Gundersen indirectly invited the response. They cite the essential elements of privilege and the fact that the letter comports with those elements and caselaw. They are correct in their assertion that a plaintiff will be barred from recovery in a defamation action if the plaintiff provoked the defamatory statements. CT Page 7792 However, the retaliatory reply must not exceed the occasion. 50 Am.Jur.2d 721, Libel and Slander, Sec. 210. A genuine issue of material fact exists as to whether publication of alleged defamatory comments were made to proper parties only, and therefore the argument that the letter is conditionally privileged because it comports with the elements of privilege and because Gundersen provoked its dissemination is unpersuasive at this time.
Count 2 — Breach of Contract
The agreement entered into between Gundersen and NES states, in part, that:
 Gundersen and the Company agree to hold the existence of this Agreement and all of the contents of its provisions, terms or conditions, in strictest confidence and not to disclose its existence or the contents of its provisions, terms or conditions, to any party, except as required by law or as is necessary for purposes of securing counsel from their attorneys or accountants. The Company agrees that if inquiries are received concerning any aspect of the employment of Gundersen by the Company, the Company will respond only by stating that Gundersen was terminated as a result of reorganization and lack of work. The Company agrees to make no comments in any way stating or implying deficiencies in the quality of Gundersen's work performance.[7]
The defendants assert that the Manion letter does not mention or describe "in any way the existence, contents, terms or conditions of the Settlement Agreement," and therefore cannot constitute a breach of the agreement. Testifying before the Energy and Public Utilities Legislative Subcommittee evinces an understanding on behalf of the plaintiff that, while the parties were prohibited from discussing the agreement itself, the parties were free to discuss the reason's surrounding plaintiff's termination which eventually led to the execution of the agreement.
Gundersen contends that the agreement provided that its terms be kept confidential, and the agreement terms set forth the events leading up to its execution, including the Department of Labor findings dated July 12, 1990, supra, from which he appealed. He claims that the defendants' conduct in asserting that the Department of Labor made certain findings without CT Page 7793 mentioning that (1) the findings were appealed, (2) that defendants, as an inducement, paid the plaintiff to enter into the agreement, is a violation of the spirit and letter of the agreement.
"The interpretation of the intention of the parties to . . . [a] settlement agreement is a question of fact. . . ."Connecticut Light Power Co. v. DPUC, 219 Conn. 51, 66. What the agreement's terms include and what the parties were free to discuss concerning Gundersen's employment termination addresses the parties' interpretation of what the agreement encompassed. The motion for summary judgment as to count two cannot prevail.
Count 3 — Interference with Prospective Advantage
Count 4 — Intentional Infliction of Emotional Distress
Count 5 — Negligent Infliction of Emotional Distress
"`It is. . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" (Citations omitted.)Batick v. Seymour, 186 Conn. 632, 646-647. Gundersen has incorporated those defamation allegations into the above counts, and recognizing that motive and intent are at the essence of the above claims, the motion for summary judgment directed at counts three, four and five is also denied.
Moraghan, J.