[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Anthony Novak, Trustee of bankrupt estate of John Scalesse, and Samuel Piccione, have timely moved to set aside a portion of the jury verdict in favor of the defendant in the above-captioned case. The verdict returned by the jury was in the form of interrogatories, such that the jury made separate findings and conclusions as to three counts: negligence in the performance of professional duties; breach of contract; and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Each claim was set forth in the verdict form under a separate Roman numeral, and the jury was required to make specific findings as to whether or not disputed elements of each claim had been proven.
The jury verdict was rendered on February 17, 1995.
In their Motion to Set Aside the Verdict filed on February 22, 1995, the plaintiffs made no mention of the jury's determination of the portions of the verdict in which the contract and CUTPA claims were ruled upon, parts II and III of the verdict. The only jury finding put at issue in the motion was the determination in the section headed Roman numeral I, in which the jury found that
 I A At the time Charles P. Scalesse gave the release of the mortgage to others to be recorded, he did not have a duty of care to Samuel Piccione either individually or as a partner in a partnership known as S S P or Scalesse, Scalesse and Piccione. CT Page 2767
The verdict form indicated that if the answer to I A was "did not", (rather than the other option supplied, "did") the jury was not to answer the next interrogatories, which asked in which capacity the plaintiff was owed a duty and whether the duty of care was breached. Accordingly, having indicated a finding that the defendant had no duty of care to Samuel Piccione either as a partner or as an individual, the jury did not decide the later issues, and its finding that the defendant owed the plaintiff no duty of care in either capacity resulted in a finding in favor of the defendant as to the negligence count.
On March 6, 1995, the plaintiffs filed a pleading titled "Amendment to Motion to Set Aside Verdict". In that pleading, they moved the court to set aside the jury's determinations not only as to the negligence count, but also as to the contract and CUTPA counts, which had not been mentioned in the original Motion to Set Aside. This court sustained the defendant's objection to the proposed amendment on the ground that no motion to set aside the verdicts as to the contract and CUTPA counts had been filed within five days of those verdicts, as required by Practice Book § 320.
Accordingly, this court will consider the merits only of the motion to set aside the verdict as to the negligence claim set forth in the first count of the complaint, as only that issue was the subject of a timely motion to set aside the verdict.
The Claims
Before proceeding to the merits of the motion, it is useful to state the issues presented in the first count of the complaint. In that count, the plaintiffs claimed that the defendant, a lawyer, was their legal counsel with regard to their participation in the acquisition of two office buildings and sale of those buildings to a limited partnership that issued them a "wrap mortgage" that secured notes signed in the acquisition of the buildings. The plaintiffs claimed that when the new owner (which, had been created by the plaintiffs and whose general partners had been recruited by the plaintiffs) anticipated a sale of the buildings to a third party, the defendant met with the plaintiffs and acted as their counsel when they each signed a release of the "wrap" mortgage for use at the anticipated sale. The plaintiffs claimed that the anticipated sale fell through but that ten months later the defendant, without their permission, released the mortgage release from escrow and allowed it to be used for another transaction in which the plaintiffs received no consideration. At trial, the CT Page 2768 defendant took the position that on December 6, 1984, when the release was signed, he had been counsel not to the plaintiffs individually but to a partnership of which they were partners: Scalesse, Scalesse Piccione, or S S P. The defendant took the position that the mortgage was a partnership asset, that the release of mortgage had been requested by the third member of the partnership, his brother, Richard Scalesse, and that it was not a breach of the duty of care to give the mortgage release to one partner upon his written request for the document.
Standard
A verdict should be set aside only when the jury could not reasonably and legally have reached its conclusion. Mather v.Griffin Hospital, 207 Conn. 125, 130 (1988); Bleich v. Ortiz,196 Conn. 498, 500 — 501 (1955); Magnon v. Glickman, 185 Conn. 234, 237
(1981); Elliott v. Sears Roebuck Co., 30 Conn. App. 664, 675
(1993). In considering a motion to set aside a verdict, a court must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the party that was successful at trial. Bound Brook Association v. Norwalk,198 Conn. 660, 667 (1986); Bleich v. Ortiz, 196 Conn. 501; Kalleherv. Orr, 183 Conn. 125, 126 — 27 (1981); Maroun v. Tarro, 35 Conn. App. 391,395 (1994).
The Supreme Court has provided a detailed discussion of the applicable standard to be used and considerations to be analyzed inPalomba v. Gray, 208 Conn. 21, 24 — 25 (1988):
 [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. . . Burr v. Harty, 75 Conn. 127, 129, 52 A. 724 (1902). The court has a duty to set aside the verdict where the jury's action is so unreasonable as to suggest that it was the product of such improper influences . . . . A verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. [citations omitted] CT Page 2769
Because the setting aside of a determination made by a jury implicates the constitutional right to have issues of fact determined by the jury, a motion to set aside should not be granted where the jury simply makes a different determination than the court would have made, where there is room for a reasonable difference of opinion among fair-minded people. Palomba v. Gray,208 Conn. 25. Rather, a motion to set aside should be granted only where the jury "could not reasonably and logically have reached the conclusion they did." Labatt v. Grunewald, 182 Conn. 236, 240
(1980).
Discussion
At oral argument on the motion to set aside the jury's verdict as to the count alleging legal malpractice, this court invited counsel for both the plaintiffs and the defendant to submit transcripts of any trial testimony on which they relied for their positions with regard to the motion.
The plaintiffs submitted transcripts of the entire testimony of the defendant and of their expert witness, Attorney James Nugent. The defendant submitted nothing, and the court therefore has relied on memory of the rest of the testimony and on its detailed trial notes.
The defendant admitted in response to numerous questions by plaintiffs' counsel that he was counsel both to Samuel Piccione and to a partnership known as S S P or Scalesse, Scalesse Piccione. The defendant testified that "between 1983 and 1986" he represented both Piccione and S S P (Trial Tr. Charles Scalesse, 2/2/95, pp. 2-3). He admitted that on December 6, 1984, when Piccione signed the release of the mortgage in the defendant's office that he was, "still representing Samuel Piccione, Richard Scalesse and John Scalesse". (Trial Tr. Charles Scalesse, 2/2/95, p. 28 and pp. 71-72).
When asked if he had an obligation to explain the release of mortgage to his clients, the defendant testified "Well, I mean, we are the lawyers, we're supposed to tell them what's going on" (Trial Tr. Charles Scalesse, 2/2/25 p. 14). The defendant admitted that he had had no conversation with Piccione between the signing of the release and giving it to Richard Scalesse for use in another transaction in October 1985 (Trial Tr. Charles Scalesse, 2/2/95 P-93). CT Page 2770
Charles Scalesse testified that as of December 6, 1984, and in connection with the release of the mortgage, Piccione "was a member of a partnership that was my client" (Trial Tr. Charles Scalesse, 2/3/95 pp. 38-39). Pressed about his status as counsel, the defendant testified, "If he was part of that partnership I guess he was my client, yes." (Trial Tr. 2/3/95 p. 39). The defendant admitted that he had not told Piccione that he was not his lawyer nor suggested that Piccione get other counsel (Trial Tr. 2/3/95 pp. 51-52). The defendant never testified that he was not the plaintiffs' lawyer at any of the times at issue, or that he had been asked to cease being their lawyer or that he had informed either of the plaintiffs that he would no longer act as their lawyer or protect their interests.
James Nugent, the lawyer called by the plaintiffs as an expert witness, testified that the defendant owed the plaintiffs a duty of care with regard to use of the release of mortgage (Trial Tr. James Nugent, 2/3/95 p. 10), and this witness did not, during cross examination, make any statement from which the jury could have inferred that Charles Scalesse ceased to have the obligations of a lawyer toward a client at any time at issue.
The expert witness presented on behalf of the defendant, Attorney Jonathan Flatow, assumed throughout his testimony that the defendant was legal counsel to the S S P partnership of which the plaintiffs were partners. Attorney Flatow testified to the effect that because S S P filed partnership tax returns for 1984 and 1985, he assumed that it existed as an entity. He stated the opinion that the defendant acted within the standard of care applicable to lawyers when he gave the release of the mortgage to one of the three partners upon request.
Testimony that a lawyer has acted within the standard of care necessarily acknowledges that the attorney has a duty of care, that is, an obligation to act in accordance with the standard of care applicable to a lawyer acting with regard to the affairs of his client. The defendant's own expert thus testified to the effect that the defendant's client was the S S P partnership and that the defendant had a duty of care as to that client at the time he handed over the release.
Attorney Flatow in no way testified or implied that Charles Scalesse was not legal counsel either for the S S P partnership or for the plaintiffs individually at the time of the events at issue. He was not asked to opine whether and when any duty of care CT Page 2771 ceased, and his testimony as a whole was to the effect that a duty of care existed for all time periods at issue to the partnership of which the plaintiffs were two of the three partners.
No witness opined, as the defendant now suggests, that another attorney, Jon Beck, was counsel to the plaintiffs or to the partnership know as S S P at the time the release passed from the defendant for use in a transaction.
The defendant asserts that the jury could have decided that since there was no evidence concerning payment of fees to the defendant and since Piccione had moved out of state, the defendant ceased to have obligations of care toward the plaintiffs. No witness advanced such interpretations of the ethical responsibilities of lawyers, and if the jury relied on such reasoning it acted contrary to the charge on the law.
In view of the lack of any supporting evidence, this court finds that the jury could not reasonably and legally have reached its conclusion as to Interrogatory IA. The court further finds that the conclusion reached by the jury on this point is so plainly and palpably the product of mistake in applying the legal principles that the determination must be set aside.
Beyond the issue of a lack of evidence, either direct or circumstantial, sufficient to support the jury's finding as to Interrogatory IA, this court finds that there is other reason to suspect that this determination arose from factors other than consideration of the evidence and of the law. The charge to the jury took place on the afternoon of February 14, 1995 after nine days of trial in a case that included long and laborious explanations of fairly complex real estate transactions. The jury deliberated throughout February 15. On February 16, it sent out a message indicating deadlock. After one instruction to go on deliberating, the court delivered the "Chip Smith" charge. On the third full day of deliberations, the jury again announced that it was unable to reach a decision and the "Chip Smith" charge was again delivered. The jury deliberated all day on February 17 and delivered its verdict shortly before 5:00 p.m. on that day, which was a Friday.
This sequence of events and the affect of the jurors in the courtroom suggests a jury eager to end its deliberations without going into another work week and not attentive to the actual evidence after three days spent mostly in deadlock. CT Page 2772
Further reason to suspect mistake or misapprehension of the principles involved arises from the fact that defense counsel, in closing argument, emphasized plaintiff Piccione's lack of present contacts to New Haven and characterized him, in effect, as a wheeler-dealer from New Jersey, who left New Haven after signing the mortgage release. The jury may have been misled by this argument into thinking that persons no longer located physically near to a lawyer are not owed a duty of care by that lawyer.
The court finds that the jury's ruling as to the first count of the complaint can only he explained as the product of mistake or improper influences as discussed above.
The motion to set aside the verdict as to the first count of the complaint is granted. A new trial shall be scheduled as to that count only. This ruling does not affect the verdict as to the claims made in the second and third counts of the complaint, which were not put at issue by a timely motion to set aside. Judgment shall enter in favor of the defendant as the second and third counts of the complaint.
Beverly J. Hodgson, Judge of the Superior Court