[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Brenda Smith, has filed a six count amended complaint against the defendants, Bridgeport Futures Initiative, Inc. (Bridgeport Futures), Annie E. Casey Foundation, Inc. (Casey Foundation), Stanley Bernard, Katrina Scott-George, Gloria Miranda, Michael Schrader, Carmen L. Lopez and August F. Serra. Counts one and three, sounding in breach of contract and promissory estoppel, are asserted against all defendants. Counts two and four, which sound in breach of implied contract and defamation, are asserted against Bridgeport Futures and the individual defendants. Counts five and six allege violation of CT Page 5745 the Connecticut Unfair Trade Practices Act (CUTPA), and breach of the implied covenant of good faith against Bridgeport Futures and the Casey Foundation.
The plaintiff alleges in her amended complaint that in August 1993, she was hired as President by Bridgeport Futures pursuant to a grant by the Casey Foundation, which was to expire in June of 1997. The plaintiff further alleges that in breach of her contract of employment, and in violation of Bridgeport Futures' by-laws, she was discharged by Bridgeport Futures on March 10, 1995. The plaintiff also alleges that Bernard, Scott-George and Miranda, associate directors of Bridgeport Futures, published a defamatory letter with Bridgeport Futures' Board of Directors, and that Schrader, Lopez and Serra, who were upper management, "authorized" the letter and failed to adequately investigate the allegations in it prior to discharging the plaintiff. Bridgeport Futures has filed a motion to strike counts four and five, as well as the demand for attorney's fees, and certain paragraphs of counts two and three. Schrader, Lopez and Serra have filed a motion to strike counts one through four and certain paragraphs of counts two and three. The Casey Foundation has filed a motion to strike counts one and five, and Bernard, Scott-George and Miranda have filed a motion to strike counts one through four, and certain paragraphs of counts two and three.
 I
The first count is stricken against all defendants except Bridgeport Futures. "The burden of alleging a recognizable cause of action rests on the plaintiff." DeMello v. Plainville,170 Conn. 675, 677, 368 A.2d 71 (1976). Even broadly construing the first count, as the court must; Beaudoin v. Town Oil Co.,207 Conn. 575, 587-88, 542 A.2d 1124 (1988); the only cause of action alleged therein is that in breach of contract against the named defendant.
 II
The second count alleges a breach of an implied contract. The third count is purportedly grounded in promissory estoppel. The defendants Bridgeport Futures and the individual defendants move to strike the plaintiff's claims for "unemployment, loss of esteem, damage to her professional career and reputation [and] mental and physical suffering" from those counts because such damages are not available in an action for breach of contract or CT Page 5746 promissory estoppel such as this. The claim of "unemployment" either is unnecessary, to the extent it seeks compensation for lost employment, which is compensable as general damages;Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1,32-34, 662 A.2d 89 (1995); or is subsumed within the other claimed damages, quoted supra, and is ordered stricken. The real issue is whether, in an action for breach of contract or an action sounding in promissory estoppel, the plaintiff may claim damages for emotional distress or for injury to her career and reputation. Given the allegations of the complaint and on the current state of the law, she may not.
"`The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.'. . . It has traditionally been held that a party may recover `general' contract damages for any loss that `may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself.' Hadley v.Baxendale, 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854). . . ." (Citations omitted.) West Haven Sound Development Corporation v.West Haven, 201 Conn. 305, 319-320, 514 A.2d 734 (1986). "Thus, `[t]he normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he would have earned under the contract, minus any wages which he has earned or could have earned elsewhere. . . .'" Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 32-33. "Mental suffering caused by breach of contract, although it may be a real injury, is not generally allowed as a basis for compensation in contractual actions." 11 Williston on Contracts (3rd Ed. Jaeger) § 1341; III Farnsworth on Contracts § 12.17, p. 274; but see generally 5 Corbin on Contracts § 1076.
Yet, our Supreme Court has recognized, quoting "Judge Cardozo in Ryan v. Progressive Grocery Stores, Inc. 225 N.Y. 388, 395,175 N.E. 105: `The rule is not so stubborn. . . . The measure is more liberal where special circumstances are present with proof of special damage." Sapiente v. Waltuch, 127 Conn. 224, 228,15 A.2d 417 (1940); accord, Burkhardt v. Armour Co., 115 Conn. 249,264, 161 A. 385 (1932).[1]
It cannot be said, within the rule of Hadley v. Baxendale,
CT Page 5747 supra, that loss of esteem, damage to one's professional career and reputation, and mental and physical suffering, such as that for which the law otherwise affords compensation, arise naturally from the breach of an employment contract. "Termination of employment is a relatively commonplace event. It is likely that a person whose employment is terminated will suffer some degree of stress and anxiety regardless of whether the termination was lawful and proper or wrongful and tortious in nature." Parsons v.Sikorsky Aircraft Division, Superior Court, judicial district of Fairfield, Docket No. 280394 (1996). Therefore, it was incumbent on the plaintiff to allege special circumstances. Sapiente v.Waltuch, supra, 127 Conn. 228. We turn next to what those special circumstances must be.
Courts have an obligation to harmonize their case law so as to bring about consistent common law development. Cf. CantonMotorcar Works, Inc. v. DiMartino, 6 Conn. App. 447, 454,505 A.2d 1255 (1986), cert. denied, 200 Conn. 802, 509 A.2d 516
(1986). Elsewhere, the Supreme Court has held that the rule that an employee at will may not sue for wrongful discharge does not necessarily prohibit an action for infliction of emotional distress. Morris v. Hartford Courant Co., 200 Conn. 676, 682 n. 4, 513 A.2d 66 (1986). However, to be actionable, the plaintiff must allege and prove the elements of intentional infliction of emotional distress or negligent or unintentional infliction of emotional distress, as the case may be. Bertozzi v. McCarthy,164 Conn. 463, 469, 323 A.2d 553 (1973); see, e.g., DeLaurentis v.New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991) (intentional infliction of emotional distress); Morris v Hartford Courant Co.,
supra, 200 Conn. 683-84 (unintentional infliction of emotional distress). For similar reasons, the court holds that to seek damages for injury to one's professional career and reputation in connection with a claim for wrongful discharge or breach of an employment contract, the plaintiff must allege the elements of a claim for defamation.
Because neither the second or third counts satisfy these requirements, the plaintiff may not recover damages for "unemployment, loss of esteem, damage to her professional career and reputation [and] mental and physical suffering." For this reason, those allegations are ordered stricken.[2]
 II
The fourth count of the complaint purports to state a claim CT Page 5748 for defamation. The defamation is based on a letter concerning the plaintiff allegedly published by the defendants Bernard, Scott-George and Miranda, all Associate Directors of Bridgeport Futures, with the Board of Directors. The defendant Bridgeport Futures moves to strike the Fourth Count of the compliant claiming "(a) Futures cannot be held liable for conduct of its employees which was outside the scope of their employment, and (b) Futures cannot be held liable for conduct of its Directors which was either outside the scope of their authority or was privileged."
 A.
Bridgeport Futures claims that Bernard, Scott-George and Miranda acted outside of the scope of their employment because the plaintiff has affirmatively alleged that they acted "with improper and unjustifiable motives" and that they "published the letter maliciously with knowledge of its falsity or with reckless disregard for the truth."
A director of a corporation, when acting for it in the conduct of its business, is its agent. See Gold Bluff Mining Lumber Corporation v. Whitlock, 75 Conn. 669, 672, 55 A. 175
(1903); New Haven Trust Co., Receiver v. Doherty, 75 Conn. 555,558, 54 A. 209 (1903). He also occupies a fiduciary relationship to the corporation. Pacelli Bros. Transportation, Inc. v.Pacelli, 189 Conn. 401, 407, 456 A.2d 325 (1983).
Under the law of many jurisdictions, including that of New York, Bridgeport Futures' claim because its directors allegedly acted with improper motives clearly is wrong. "Generally, the rule of respondeat superior is applicable in libel cases. While an agent or employee may be liable for publishing a defamation, an employer may be liable where an employee makes a defamatory statement within the course and scope of his employment. . . . Also, a principal or employer who has ratified and adopted the libelous publication may be held liable." 53 C.J.S., Libel 
Slander, § 117; see, e.g., Paine Webber Jackson Curtis,Inc. v. Winters, 22 Conn. App. 640, 643-646, 579 A.2d 545 (1990), cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). In New York, "[t]he test for employer liability is whether the act was done while the servant was doing his master's work, no matter how irregularly or with what disregard of instruction. . . . If generally foreseeable, even intentional torts may fall within the scope of employment." (Citation omitted; internal quotation marks CT Page 5749 omitted.) Id., 645.
Connecticut law on this issue, at least in tone if not in substance, is more circumspect. "We have long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. . . . `But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply.' Mitchell v.Resto, 157 Conn. 258, 262, 253 A.2d 25 (1968); Wells v. WalkerBank Trust Co., 590 P.2d 1261, 1264 (Utah 1979) (if employee's actions are not authorized by his employer and he is acting for his own interests and not in furtherance of his employer's business, employer cannot be held vicariously liable for employee's actions)." (Citations omitted.) A-G Foods, Inc. v.Pepperidge Farm, Inc., 216 Conn. 200, 208, 579 A.2d 69 (1990).
It may be doubted whether an employer ought to be held vicariously liable for a tort like libel as readily as New York law would have it where it is clear that the employee or agent is not speaking on behalf of the employer. This is especially so where malice is alleged and is a necessary element. Malice is a uniquely personal emotion. Certainly the stockholders of a public corporation may justly wonder why they should be held to answer in damages for defamatory correspondence sent by a corporate employee to the board of directors. However, these questions are ill-suited to a motion to strike. Although the scope of an agent's authority may become a question of law when the material facts are undisputed; Russo v. McAviney, 96 Conn. 21, 24,112 A. 657 (1921); in the absence of such a stipulation, it is a question of fact for the trier. Newtown Associates v. NortheastStructures, Inc., 15 Conn. App. 633, 638, 546 A.2d 310 (1988). It is, therefore, not susceptible to a motion to strike.
Bernard, Scott-George and Miranda have also moved to strike count four on the ground that the letter was a privileged communication. "`There are two facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. . . . [W]hether the privilege was abused . . . depends upon whether there was malice in fact . . . in uttering and broadcasting the alleged defamatory matter.'Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605,615, 116 A.2d 440 (1955); see also Bleich v. Ortiz, 196 Conn. 498, CT Page 5750 504, 493 A.2d 236 (1985)." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., supra, 234 Conn. 28. "[C]ommunications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business. See 3 Restatement (Second) Torts § 593, and § 596 and comment (d) (1977); W. Prosser W. Keeton . . . [Torts (5th Ed. 1984)] § 115(3), pp. 828-29; R. Smolla . . . [Law of Defamation (1994)] § 15.07 [2] [a] and cases cited therein; see also Bleich v. Ortiz, supra, 196 Conn. 505 . . . Miles v.Perry, 11 Conn. App. 584, 594 n. 8, 529 A.2d 199 (1987)." Id., 29. Malice is established if the statement is made with "knowledge of its falsity or with reckless disregard as to its truth." Id., 29.
The plaintiff alleges in count four that Bernard, Scott-George and Miranda knew or should have known that the statements they made in the letter concerning the plaintiff were false. Therefore, the plaintiff has sufficiently alleged malice on the part of Bernard, Scott-George and Miranda, thus bringing the allegations outside of the scope of the qualified privilege. Accordingly, the motion to strike count four as to Bernard, Scott-George and Miranda is denied.
 B.
The fourth count also alleges that "Defendant's upper management, including Defendants Michael Schrader, Carmen L. Lopez and August F. Serra, were involved in the inadequate investigation and the decision to discharge Plaintiff, and expressly authorized the Letter." In their motions, Bridgeport Futures, and Schrader, Lopez and Serra move to strike the fourth count because the acts therein alleged were privileged. In their supporting memoranda, however, Bridgeport Futures, Schrader, Lopez and Serra augment their argument to include the claim that no defamation or other recognizable tort is alleged as to Schrader, Lopez and Serra and that, therefore, they cannot be held liable based on such a claim. Under such circumstances, the court may consider the additional claim contained in the memorandum. Rowe v. Godou, 12 Conn. App. 538, 541-42,531 A.2d 177 (1983), rev'd on other grounds, 209 Conn. 273, 275,550 A.2d 1073 (1988). The court agrees with the defendants. CT Page 5751
There is no basis for imposing on an employer-defendant a duty owing to an employee to investigate a complaint made against that employee. Cf. Morris v. Hartford Courant, supra, 200 Conn. 680. As for the allegation that Schrader, Lopez and Serra "expressly authorized the letter", it is true that "[p]leadings should be read broadly and realistically, and not narrowly and technically"; LeConche v. Elligers, 215 Conn. 701, 716,579 A.2d 1 (1990); but in the context in which it is pleaded in the fourth count, this claim is at best cryptic.[3] Specifically, it is unclear whether Schrader, Lopez and Serra generally authorized a letter concerning job performance, authorized a letter concerning the plaintiff's job performance in particular, or, indeed, authorized a letter which they knew would contain the allegedly defamatory allegations. Construing this allegation "broadly and realistically" leaves the court and the defendants at sea. The defendants requested that the plaintiff revise this paragraph to specifically state the factual basis for the claim. Practice Book § 147(1). The plaintiff did not object to the request, yet the revision does not appear in the amended complaint. In light of these circumstances, the fourth count is stricken.
 III
The fifth count incorporates the claims of the preceding four counts, which claim that the plaintiff was improperly discharged and was defamed, then adds that these actions constitute an unfair trade practice under General Statutes § 42-110a et seq. The defendants Bridgeport Futures and the Casey Foundation move to strike the fifth count because CUTPA does not apply to disputes arising out of the employer-employee relationship. The defendants are correct. Quimby v. Kimberly Clark Corp., 28 Conn. App. 660,613 A.2d 838 (1992); Fitzgerald v. Forelli, Superior Court, judicial district of Fairfield, Docket No. 272365 (1990) (Thim, J.). The fifth count is ordered stricken.
 IV
In its final ground of its motion, Bridgeport Futures seeks "to strike the demand for attorney's fees as against Bridgeport Futures, on the ground that after striking the Fifth Count of the Amended Complaint, no remaining claim against Futures supports an award of attorneys fees." This is correct.
What remains of the amended complaint against Bridgeport Futures is a variously stated claim for breach of contract and a CT Page 5752 claim of libel based on vicarious liability for the acts of agents who allegedly acted with malice. Punitive damages, equal to the expenses of litigation less taxable costs, may be recovered in an action for libel against the utterer or author of the defamatory remarks. Proto v. Bridgeport Herald Corp.,136 Conn. 557, 571, 72 A.2d 820 (1950); Ventresca v. Kissner,105 Conn. 533, 537-38, 136 A. 90 (1927); Craney v. Donovan, 92 Conn. 236,243-44, 102 A. 640 (1917). To the extent that "its agent was acting within the scope of his employment, the law compels the defendant [Bridgeport Futures] to compensate the plaintiff for the injuries she has sustained from the wrongful acts of the agent, but it does not punish the defendant [Bridgeport Futures] for the malicious purpose or intent which prompted the agent's conduct. To render the principal liable in exemplary damages for the acts of his agent in the course of his employment, but done with such malicious intent, some misconduct of the former beyond that which the law implies from the mere relation of principal and agent, must be shown." Maisenbacker v. Society Concordia,71 Conn. 369, 379, 42 A. 67 (1899). Maisenbacker still is the law in Connecticut and "[m]odern authorities still deplore the imposition of punishment in the form of damages upon those who are only vicariously liable. 4 Restatement (Second) Torts §§ 908, 909." Gionfriddo v. Avis Rent A Car Systems, Inc., 192 Conn. 280,299, 472 A.2d 306 (1984) (Shea, J., dissenting); see also, Restatement (Second) Agency § 217C.
The only allegation which implicates the defendant Bridgeport Futures in the alleged libel is the allegation that certain of its "upper management" authorized the letter, which contained the allegedly libelous statements. As discussed supra, however, it is too unclear that the authorization extended to the alleged libelous statements in particular. The claim for attorneys fees as against Bridgeport Futures is ordered stricken.
Order accordingly
BY THE COURT
Bruce L. Levin Judge of the Superior Court