[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Gary J. Cucuel, has filed an eleven count amended complaint alleging breach of contract, negligent misrepresentation, intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, wilful or malicious conduct, vexatious litigation, two counts of violation of the Connecticut Unfair Trade Practices Act (CUTPA), negligent infliction of emotional distress and intentional infliction of emotional distress, against the defendants Ali Fayed and the Ritz Enterprises Limited (Ritz).[1] In count eleven the plaintiff seeks to pierce Ritz' corporate veil and to hold Fayed liable for its alleged torts and breaches of contract.
The plaintiff alleges the following facts in his complaint. The plaintiff entered into a three year employment contract with the defendants, beginning September 1, 1990 and lasting until September 1, 1993, whereby the plaintiff was to resign his job as a sergeant in the Greenwich police force and other part time employment, and was to commence performing certain duties at the Fayed's home. In December 1990, the plaintiff was informed that his services were no longer required under the contract and that he was to seek other employment. After negotiations, the plaintiff agreed to provide services to the Red Cross for the balance of the contract. On October 9, 1992, the plaintiff was told by the defendants to discontinue his work at the Red Cross, and to begin work transporting carpenters from Xhema Remodeling Co. to and from New York City. The plaintiff refused and remained working at the Red Cross. The defendants refused to continue to pay his salary and benefits.
The defendants have filed four special defenses. In their special defenses the defendants allege that the plaintiff has failed to mitigate his damages, that the contract was voided by the plaintiff's actions, that certain counts are barred by the exclusivity provisions of the Workers' Compensation Act, and that certain counts are barred by the applicable statutes of CT Page 1573 limitations.
The defendants have filed a motion for summary judgment[2] on the plaintiff's amended complaint. The defendants move for summary judgment as to count one in favor of Fayed on the ground that he was not a party to the contract of employment; as to counts two and three on the ground that they are barred by the applicable statute of limitations; as to counts two, three, four, nine and ten on the ground that they are barred by the exclusivity provisions of the Workers' Compensation Act; as to counts two, three, four, five, six, nine and ten on the ground that they are legally insufficient; as to count seven on the ground that the defendants have the statutory right to contest the plaintiff's unemployment claim; as to counts six and eight on the ground that CUTPA is not applicable to the employer-employee relationship; and, as to count eleven on the ground that there is no basis to pierce the corporate veil.
 I
The defendants first contend that Fayed was not a party to the contract of employment and that, therefore, he is entitled to summary judgment on count one, which alleges a breach of that contract by the defendants. The plaintiff responds that whether Fayed was a party to the contract of employment is a question of material fact.
"`Where the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact. . . .' (Citations omitted; internal quotation marks omitted.) Tremaine v. Tremaine, 235 Conn. 45, 57,663 A.2d 387 (1995)." 24 Leggett Street Ltd. Partnership v. BeaconIndustries Inc., 239 Conn. 284, 295, ___ A.2d ___ (1996). "When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. Mulligan v. Rioux,229 Conn. 716, 740, 643 A.2d 1226 (1994). When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved. See CT Page 1574Dainty Rubbish Services, Inc. v. Beacon Hill Assn., Inc.,32 Conn. App. 530, 533-34, 630 A.2d 115 (1993)." Bank of Boston Connecticut v. Avon Meadow Associates, 40 Conn. App. 536, 540,671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996).
The contract of employment unambiguously states: "Effective September 1, 1990, you will be a full time employee of Ritz Paris Enterprises Limited with an annual salary of $40,000. . . ." The plaintiff signed this document. The plaintiff points to the fact that the agreement was on the letterhead of Park Lane Investments, Inc., required that services be rendered to Fayed, and was signed by Haemisegger without disclosing his capacity. Even if the first two of these matters could render the unambiguous language of the contract ambiguous, that ambiguity would not raise a material fact as to whether Fayed was a party to the contract. To put it otherwise, simply because evidence permits an inference that A, B or C committed an act does not permit an inference that X may have committed it.
However, Haemisegger's signing of the document in an undisclosed capacity stands on different footing. On the one hand, "[t]he law is settled that where an agent contracts in his own name, without disclosing his representative capacity, the agent is personally liable on the contract." Murphy v. DellCorp., 184 Conn. 581, 582, 440 A.2d 223 (1981). However, it also is settled that "[o]n discovering . . . that the contract was for the benefit of an undisclosed principal, [the plaintiff] had a right to hold the latter." Simon v. Fernandez, 100 Conn. 438,442, 123 A. 904 (1924); see also E.M. Workman Co. v. Harrison,
3 Conn. Cir. 557, 561, 221 A.2d 276 (App.Div. 1966).
There is evidence that Haemisegger was an agent of Fayed. More, the totality of the evidence certainly permits an inference that Haemisegger was not signing this contract in his individual capacity. There is an issue of fact as to whether he signed the contract as Fayed's agent, and summary judgment is precluded because there is a material question of fact as to whether Fayed was thereby a party to this agreement.
 II
The defendants next maintain that the second and third counts, in which the plaintiff alleges causes of action of negligent and intentional misrepresentation, are barred by the statute of limitations pursuant to General Statutes §§ 52-584 and CT Page 157552-577.[3] The plaintiff argues that the statute of limitations was tolled by a continuing course of conduct.
The gravamen of the second count, as stated in paragraph 15 thereof, is: "The Defendants made unconditional representations and negligently misrepresented their intent to hire the Plaintiff for a three year period for a specified job description involving caretaker and driver functions and subsequently in agreeing that the Plaintiff would provide services on behalf of the Defendants to the American Red Cross for a two year period, all for agreed upon salary and benefits to be paid by the Defendants." The gravamen of the third count, as stated in paragraph 15 thereof, is that the defendants intentionally made these misrepresentations.
Although the issue may not have been clear in the recent past; see Johnson v. Healy, 176 Conn. 97, 100-102, 405 A.2d 54
(1978); there appears no reason why the negligence statute of limitations, General Statutes § 52-584, should not apply to a claim of negligent misrepresentation. Cf. Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 585-86, 657 A.2d 212
(1995)(holding, albeit as a matter of common law, that the policy of the comparative negligence statute, § 52-572h, applies to actions for negligent misrepresentation even where only commercial losses are claimed).
General Statutes § 52-584 provides in pertinent part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ." (Emphasis added.) "In this context injury occurs when a party suffers some form of `actionable harm.'" Burns v. Hartford Hospital, 192 Conn. 451, 460,472 A.2d 1257 (1984). "`Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotations marks omitted.) Lambert v. Stovell, 205 Conn. 1, 6, 529 A.2d 710
(1987).
There is no question as to the applicable statute of CT Page 1576 limitations with respect to the plaintiff's claim of intentional misrepresentation. Allegations of intentional tort are governed by the statute of limitations pursuant to General Statutes §52-577. Lambert v. Stovell, supra, 205 Conn. 5. General Statutes §52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. Our Supreme Court stated in Fichera v. Mine HillCorporation, 207 Conn. 204, 212, 541 A.2d 472 (1988): `In construing our general tort statute of limitations, General Statutes § 52-577, which allows for an action to be brought within three years "from the date of the act or omission complained of," we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. Prokolkin v.General Motors Corporation, [170 Conn. 289, 294-97, 365 A.2d 1180
(1976)].'" S. M. S. Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790-791,631 A.2d 340 (1993).
The first agreement alleged in the complaint was entered into on June 8, 1990. Actionable harm to the plaintiff occurred in December 1990, when the defendants allegedly first refused to honor that agreement. Service was made on the defendants on July 12, 1994, more than four years after the agreement was executed and three-and-a-half years after any actionable harm to the plaintiff occurred. See McGaffin v. Roberts, 193 Conn. 393, 401
n. 9, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050,105 S.Ct. 1747, 84 L.Ed.2d 813 (1985) (an action is commenced on the date of service). Therefore, no action for misrepresentation may be predicated on that agreement, whether in negligence or intentional tort.
The claim of misrepresentation based on the second agreement, whereby the plaintiff was to work for the American Red Cross, requires some scrutiny of the record, especially the plaintiff's deposition. The plaintiff actually began working for the Red Cross on July 15, 1991. Prior to that date, the exact date being uncertain to him, the plaintiff signed the agreement pursuant to which he went to work for the Red Cross.[4] Prior to signing the agreement and prior to June 21, 1991, the plaintiff met with Jean Hall, Executive Director of the Red Cross, and CT Page 1577 Corrine Cobbol, a representative of Ritz. The three participants in the meeting discussed what the plaintiff's responsibilities would be if he went to work for the Red Cross. The plaintiff did not sign the agreement at this meeting, but thereafter had discussions with his attorney and Ms. Hall. Significantly, the plaintiff did not speak with anyone from Ritz. Therefore, as the defendants observe, by the plaintiff's own account, the last time he spoke with any representative of the defendant Ritz prior to signing the agreement to work at the Red Cross was when he met with Corrine Cobbol sometime prior to June 21, 1991. Since this action was not brought until more than three years after that date, any action for negligent or intentional misrepresentation would be barred by the statutes of limitation. Indeed, the plaintiff does not dispute this conclusion.
Rather, the plaintiff seeks to avoid that bar by arguing that the defendants engaged in a "continuous course of conduct". "`When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.' Handler v. Remington Arms Co.,144 Conn. 316, 321, 130 A.2d 793 (1957). `[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.' (Internal quotation marks omitted.)Blanchette v. Barrett, supra, 229 Conn. 275." Sanborn v.Greenwald, 39 Conn. App. 289, 295, 664 A.2d 803 (1995).
"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . For example, the doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run CT Page 1578 . . . ." (Citations and internal quotation marks omitted.)Sanborn v. Greenwald, supra, 295-296.
The plaintiff devotes one paragraph in his brief to this argument.[5] Nothing in the plaintiff's affidavit or other documentary materials submitted in opposition to the motion for summary judgment supports that argument. The short answer to this claim is: "There are no allegations of facts in the complaint to support a continuing duty of the defendant[s] . Bartha v.Waterbury House Wrecking Co., 190 Conn. 8, 13, 459 A.2d 115
(1983). Because there is no material fact in issue . . . the defendant[s] [are] entitled to judgment as a matter of law."Sanborn v. Greenwald, supra, 39 Conn. App. 298.
 III
The defendants also contend that counts two and three, as well as count four, alleging breach of the duty of good faith and fair dealing, and counts nine and ten, alleging negligent and intentional infliction of emotional distress, are barred by the exclusivity provisions of the Workers' Compensation Act. The defendants are mistaken. "Clearly, the process of being fired is not a duty of employment. The proper inquiry is whether the process of being fired was incidental to the plaintiff's employment. See McNamara v. Hamden, [176 Conn. 547, 551,398 A.2d 1161 (1971)]. `[T]he rule for determining whether the activity is incidental to the employment turns on whether the activity is regularly engaged in on the employer's premises, within the period of employment, and with the employer's approval or acquiescence.' Pagani v. BT II Limited Partnership, [24 Conn. App. 739,592 A.2d 397, cert. dismissed, 220 Conn. 902,593 A.2d 968 (1991)]; see McNamara v. Hamden, supra. The critical language here is `regularly engaged in.' By its nature, the process of being discharged normally occurs only once in an employee's tenure. It cannot be considered conduct regularly engaged in as an incident to employment." Fulco v. Norwich RomanCatholic Diocesan Corp., 27 Conn. App. 800, 809, 609 A.2d 1034
(1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993). The plaintiff's claims arise out of misrepresentations made prior
to employment, and the termination of that employment. Therefore, such allegations are not encompassed within the exclusivity provisions of the Workers' Compensation Act.
IV
CT Page 1579
The defendants argue that counts two, three, and four are legally and factually insufficient. The defendants also assert that counts five, six[6], nine and ten, alleging willful and malicious misconduct, violation of CUTPA, and negligent and intentional infliction of emotional distress are factually and legally insufficient.
The court has held that counts two and three are barred by the statutes of limitation.
With respect to count four, the defendants rely uponFeinberg v. Berglewicz, 32 Conn. App. 857, 861-62, 632 A.2d 709
(1993), in which the court stated that "`[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.' Habetz v. Condon,224 Conn. 231, 238, 618 A.2d 501 (1992). `Bad Faith means more than mere negligence; it involves a dishonest purpose.' Id., 237. Neglect or refusal to fulfill a contractual obligation can be bad faith only if prompted by an interested or sinister motive. Id." The defendants contend that the facts do not show any interested motive or sinister purpose. However, "[g]enerally, issues involving motive or intent are not properly resolved on a motion for summary judgment." Union Trust Co. v. Jackson, 42 Conn. App. 413,419, 679 A.2d 421 (1996). The defendants have not submitted evidence in support of their motion which would remove this case from that general rule.
Regarding the fifth count, the defendants maintain that the defendants' conduct was not wilful, wanton, outrageous or reckless in that the parties merely dispute whether the duties the plaintiff was asked to perform were encompassed within his contract of employment. The plaintiff alleges that the defendants actions were intentional, resulting in financial damages, emotional damages, stress and damage to his professional reputation. Whether the defendants' actions rise to the level of wilful or wanton misconduct is a genuine issue of material fact which cannot be determined by the court on this record.
"[A] plaintiff may recover for [negligent infliction of] emotional distress if `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.'" Barrett v. Danbury Hospital,232 Conn. 242, 260, 654 A.2d 748 (1995), citing, Montinieri v.CT Page 1580Southern New England Telephone Co., 175 Conn. 337, 345,398 A.2d 1180 (1978). The defendants argue that the plaintiff has not produced any medical records supporting this claim. The short answer is that the plaintiff need not necessarily do so at this juncture. "The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). Therefore, whether the plaintiff suffered emotional distress to such an extent that the law deems actionable is a genuine issue of material fact.
The defendants also maintain that the plaintiff's claim in intentional infliction of emotional distress is legally insufficient because the defendants' actions were not extreme or outrageous, and the plaintiff has not suffered severe emotional distress. "In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. `It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . .' (Citations omitted; internal quotation marks omitted. ) DeLaurentis v. New Haven, 220 Conn. 225,266-67, 597 A.2d 807 (1991)." Drew v. K-Mart Corp., 37 Conn. App. 239,251, 655 A.2d 806 (1995). The defendants argue that their conduct was neither extreme nor outrageous, and that the plaintiff's emotional distress was not severe.
"Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury. Reed v. Signode Corporation, 652 F. Sup. 129, 137
(D. Conn. 1986); 1 Restatement (Second), Torts § 46, comment (h) (issue of extreme and outrageous conduct) and comment (j) (issue of severe emotional distress)." (Footnotes omitted.) Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 18-19, 597 A.2d 846 (Berdon,J., 1991). "`The extreme and outrageous character of the conduct CT Page 1581 may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.' 1 Restatement (Second), Torts § 46, comment (e)." Id., 20.
The plaintiff alleges that the defendants induced him to give up his career with the police department, misrepresented their intent to hire him for three years, terminated him without cause, and maliciously opposed his entitlement to unemployment benefits. As a result the plaintiff claims that he has suffered emotional distress, physical stress. Summary judgment might be appropriate here; cf. Parsons v. Sikorsky Aircraft Division,United Technologies, Inc., Superior Court, Judicial District of Fairfield, Docket No. 280394 (1996); Smith v. Bridgeport FuturesInitiative, Inc., Superior Court, Judicial District of Fairfield, No. 326697 (17 Conn. L. Rptr. 412) (1996); but for the allegations that the defendants lured the plaintiff away from his career in the police department and never intended to honor their contracts with the plaintiff. Moreover, there is evidence in the plaintiff's affidavit that Haemisegger, Fayed's agent, urged the plaintiff to obtain a written contract because Fayed could be arbitrary. The defendants have not proven their entitlement to summary judgment on the fifth count.
 V
The defendants assert that they are entitled to summary judgment on counts six and eight because CUTPA is not applicable to the employer-employee relationship because such conduct does not arise out of a trade or commerce. The plaintiff contends that the defendants' acts in soliciting his employment and contesting his unemployment compensation claim did not arise during his employment. The plaintiff further argues that because he worked for the Red Cross it may be found that he was not an employee of the defendants.
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670,613 A.2d 838 (1992), the Appellate Court, relying on Banerjee v.Roberts, 641 F. Sup. 1093 (D.Conn. 1986), held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." "The Banerjee court noted that `[a]lthough an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA.' Id., 1108, citing Manning v.CT Page 1582Zuckerman, 388 Mass. 8, 13, 444 N.E.2d 1262 (1983) (construing similar Massachusetts statute); see also Collins v. Gulf OilCorporation, 605 F. Sup. 1519, 1523 (D.Conn. 1985)." Id. This court is bound by the holding in Quimby. See Jolly, Inc. v.Zoning Board of Appeals, 237 Conn. 184, 195, 676 A.2d 831 (1996);Montes v. Hartford Hospital, 26 Conn. Sup. 441, 442-443,226 A.2d 798 (1966).[7]
The plaintiff's own allegations, as well as the evidence presented, demonstrate that the plaintiff was hired by the defendants to perform services for the Fayeds. The allegations and the evidence do not reveal any trade or commerce being carried on except for the actual engagement of the plaintiff, creating an employer-employee relationship. Additionally, the defendants' contesting of the plaintiff's unemployment compensation also arises out of the employment relationship. SeeCollins v. Gulf Oil Corporation, supra, 605 F. Sup. 1523. The plaintiff argues that he can be considered an employee of the Red Cross, and that, therefore, an employment relationship did not exist between the plaintiff and defendants. However, in his amended complaint the plaintiff incorporates within his CUTPA claims the allegations supporting all his other claims, in which he alleges he was an employee of the defendants. "The plaintiff cannot have it both ways." Kelemen v. Rimrock Corp., 207 Conn. 599,607, 542 A.2d 720 (1988). Because the plaintiff's CUTPA claims arise out of his employment relationship, the defendants' motion for summary judgment is granted as to counts six and eight.
 VI
The defendants have also moved for summary judgment on count seven. The nature of the cause of action set forth in count seven is not entirely clear. It is therefore necessary to examine the allegations in that count.
Count seven incorporates the allegations of the preceding counts and adds the following: The plaintiff applied for unemployment compensation benefits. The defendants through their agents, servants and employees maliciously opposed the plaintiff's application even though they knew that there was no probable cause to oppose it. As a result, the plaintiff's unemployment compensation benefits were delayed, he was required to hire a lawyer and incur legal fees, and suffered emotional distress and physical stress and a delay in the payment of CT Page 1583 unemployment compensation benefits. The plaintiff concludes this count with the allegation: "The defendants' conduct was wilful, wanton, reckless and vexatious, which conduct forms the basis for a distinct cause of action as set forth by the Supreme Court in the case of Warner v. Leslie-Elliott Constructors, Inc.,194 Conn. 129 (1984)."[8] In his brief in opposition to the motion for summary judgment, the plaintiff states that count seven is a "claim of willful, wanton, reckless, and vexatious opposition to his unemployment [compensation] proceeding. . . ."[9]
The defendants contend that they had an absolute statutory right to challenge the plaintiff's eligibility for benefits. The plaintiff maintains that it is an issue of fact as to whether the defendants had probable cause to contest his collection of unemployment benefits. The court agrees with the defendants.
"`[A] claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor.Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978);Calvo v. Bartolotta, 112 Conn. 396, 397, 152 A. 311 (1930);Schaefer v. O.K. Tool Co., 110 Conn. 528, 532, 148 A. 330 (1930). In suits for vexatious litigation, it is recognized to be sound policy to require the plaintiff to allege that prior litigation terminated in his favor.'" Zeller v. Consolini, 235 Conn. 417,424, 667 A.2d 64 (1995). In DeLaurentis v. New Haven, 220 Conn. 225,248-249, 597 A.2d 807 (1991), the court held, citing Restatement (Second), Torts, § 680, that an action for vexatious suit could be based on the favorable termination of a prior proceeding before an administrative board. The DeLaurentis court catalogued cases from other jurisdictions which, following the Restatement, had held that a variety of administrative, licensing and disciplinary proceedings could form the basis for an action for vexatious suit. Id., 248 n. 10. Also, the DeLaurentis court expressed its agreement "with the Restatement (Second) of Torts, § 680, which permits liability for vexatious `initiation,continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of another.'" (Emphasis added; footnote omitted.) Id., 248.
The plaintiff's claim necessarily fails for two reasons. First, there is no question of fact that the defendants did not institute any proceeding whatsoever. Rather, it was the plaintiff who instituted the proceedings complained of by making a claim CT Page 1584 for unemployment compensation benefits. See General Statutes §§31-240, 31-241.[10] Absent a statutory provision providing therefor; see, e.g., General Statutes § 31-300 (penalty for unreasonable contest of worker's compensation claim); there is no cause of action for defending against a proceeding or opposing the relief sought even where no defense exists.[11]
Second, it is evident that the acts of the defendants in opposing his claim for unemployment compensation benefits, of which the plaintiff complains, are precisely those which Connecticut courts have held are absolutely privileged. "InMagnan v. Anaconda Industries, Inc., [37 Conn. Sup. 38, 42,429 A.2d 492 (1980), reversed on other grounds, 193 Conn. 558,479 A.2d 781 (1984)], the Superior Court, Berdon, J., held that an employer who discharges an employee has an absolute privilege when supplying the information necessary for the `unemployment notice' required by regulation. The court based its decision on the conclusion that the information is furnished in connection with a quasi-judicial function of an administrative board. That court found that in unemployment compensation proceedings `[t]he administrator, the referee and the review board, including witnesses in proceedings before them, are absolutely privileged to publish defamatory matters provided such statements have some relation to the quasi-judicial proceeding. Other jurisdictions have reached this same conclusion. . . . ' Id., 45." (Citations and footnote omitted.) Petyan v. Ellis, 200 Conn. 243, 247,510 A.2d 1337 (1986). The court in Petyan v. Ellis "agree[d] with the conclusion of the [trial] court in Magnan and extend[ed] its reasoning to include the information supplied by an employer on the `fact-finding supplement' form of the employment security division of the state labor department." Id., 247-248. Thus, the information supplied by an employer on the unemployment notice and fact-finding supplement forms as well as evidence given in support of its position are absolutely privileged. To say that it is absolutely privileged with respect to defamation but not for another tort would, in this context, be manufacturing a distinction without a rationale.
The plaintiff complains, however, that the defendants submitted false evidence in the form of a letter, which purportedly had been sent or delivered to the Red Cross, in connection with their opposition to his claim for unemployment compensation benefits. See note 4, supra. Such evidence comes within the ambit of the absolute privilege conferred by the Supreme Court. According to a leading treatise and another judge CT Page 1585 of this court "[a]lthough there is no `really effective civil remedy against perjurers', that lack is `simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.' Prosser Keeton, Torts (5th Ed. 114, p. 817)." Sperry v. Post PublishingCompany, Superior Court, Judicial District of Fairfield, No. 279345 (6 CSCR 512) (May 1, 1991) (Katz, J.).
For these reasons, the defendants are entitled to summary judgment on the seventh count.
 VII
Finally, the defendants argue that there is no legal or factual basis to pierce the corporate veil to impose individual liability on Fayed. The plaintiff responds that he has sufficiently pleaded facts enabling the piercing of the corporate veil, and that whether the corporate veil should be pierced is a question of fact.
"The issue of whether the corporate veil is pierced presents a question of fact." Tomasso v. Armor Construction Paving,Inc., 187 Conn. 544, 561, 447 A.2d 406 (1982). The defendants contend that the holding of Campisano v. Nardi, 212 Conn. 282,293, 562 A.2d 1 (1989) does not permit the corporate veil to be pierced when "individual control of a corporation is coupled with a breach of contract by the corporation." However, as discussed supra, the plaintiff has alleged more than a mere breach of contract by the corporation, and the corporate veil may be pierced if the plaintiff was improperly induced to enter a contract with the plaintiff. Campisano v. Nardi, supra,212 Conn. 294. Even apart form the conclusory allegations contained therein, the plaintiff's affidavit sufficiently raises questions of fact. Therefore, whether the corporate veil may be pierced to find individual liability on the part of Fayed presents a genuine issue of material fact, precluding summary judgment.
 VIII
In conclusion, the defendants' motion for summary judgment is denied as to counts one, four, nine and ten. The motion for summary judgment is granted as to counts two, three, six, seven and eight.
BY THE COURT CT Page 1586
Bruce L. Levin Judge of the Superior Court